**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

AJTZAC OSORIO, Luis David

Petitioner,

v.

ANTONE MONIZ, Superintendent, Plymouth County Correctional Facility PATRICIA HYDE, Field Office Director, TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security; and PETE HEGSETH, U.S. Secretary of War

Respondents.

Case No. 1:25-CV-12678-DJC

**PETITIONER'S EMERGENCY MOTION AND INCORPORATED MEMORANDUM FOR A TEMPORARY RESTRAINING ORDER**

## I. INTRODUCTION

Petitioner Luis David Ajtzac Osorio ("Petitioner" or "Luis") respectfully moves this Court for a temporary restraining order pending the Court's adjudication of his Petition for a Writ of Habeas Corpus. On October 16, 2025, the Immigration Court terminated removal proceedings against the Petitioner, **for the second time**. *See* Exhibit 1 hereto. As the Petitioner is no longer in removal proceedings, there is no basis for his continued detention and he respectfully requests the Court to order Respondents to restrain from continuing to detain him during the pendency of his Petition and order his immediate release without any additional restraints on his liberty.

## II. FACTUAL BACKGROUND

Luis is an 18-year-old boy. He was born in Guatemala and came to the United States on

his own in April 2023, at the age of 15. Department of Homeland Security ("DHS") Notice to Appear, dated April 13, 2023 (ECF No. 6), Ex. 2. Because he entered the U.S. as an Unaccompanied Child as defined at 6 U.S.C. § 279(g)(2), he was not held in Immigration and Customs Enforcement ("ICE") custody after he was apprehended by Customs and Border Protection ("CBP") at entry. Because of the protections afforded Unaccompanied Children by the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), he was instead placed in the custody of the Office of Refugee Resettlement and eventually released to the care of his uncle in New Bedford, Massachusetts. Office of Refugee Resettlement Verification of Release Form (ECF No. 6), Ex. 1.

The TVPRA provides that Unaccompanied Children sought to be removed by DHS must be placed in removal proceedings pursuant to INA § 240, 8 U.S.C. § 1229a. TVPRA § 235(a)(5)(D). While in removal proceedings before the Boston Immigration Court, Luis petitioned U.S. Citizenship and Immigration Services ("USCIS") for Special Immigrant Juvenile Status ("SIJS"), and such status was conferred by USCIS on May 5, 2024. *See* I-360 Approval Notice (ECF No. 6), Ex. 3. The government also granted Luis Deferred Action, thereby exercising its discretion to defer removal proceedings against Luis while he waited to adjust his status to that of a lawful permanent resident pursuant to SIJS. The grant of Deferred Action also made Luis eligible for employment authorization, and his work permit application was approved by USCIS on June 24, 2024. *See* Copy of EAD (ECF No. 6), Ex. 4. On January 16, 2025, the Boston Immigration Court terminated Luis' removal proceedings. *See* Order of the Immigration Judge (ECF No. 6), Ex. 5.

Since his arrival in the United States and his release from ORR custody, Luis has resided in New Bedford, Massachusetts. Declaration of Luis David Aztac Osorio ("Petitioner Decl.") (ECF

No. 6), Ex. 6. When he was arrested by ICE on September 19, 2025, Luis was employed and working for a company painting boats in New Bedford. *Id.* In addition to supporting himself, Luis was also sending money to Guatemala because his older brother has a medical condition, and he was helping provide for his care. *Id.*

Upon information and belief, Luis was detained without cause during the early morning of September 19, 2025, when multiple ICE vehicles surrounded the van Luis was riding on while on his way to work. *Id.* Luis was violently grabbed, thrown on the ground, and restrained by an ICE officer who provided no explanation to Luis for his arrest. *Id.* At the time of the arrest, Luis' Deferred Action was still in effect and he was therefore considered to be lawfully present in the United States. His grant of Deferred Action has since been revoked by USCIS with no explanation and no change in circumstances that would merit such revocation. *See* Termination Notice (ECF No. 6), Ex. 9. Termination of Deferred Action invalidates his approved work authorization.

Luis has been in ICE custody for 29 days. He has been held in deplorable conditions at the ICE Enforcement and Removal Operations ("ERO") Headquarters in Burlington, Massachusetts, where he was not given any food for almost 24 hours. Petitioner Decl. (ECF No. 6), Ex. 6. Since September 20, he has been held at the Plymouth County Correctional Facility, away from his family and his community, unable to work and unable to continue sending life-saving support to his brother in Guatemala. The Immigration Court has now twice terminated removal proceedings, so there is zero basis for his continued detention.

## III. PROCEDURAL HISTORY

Petitioner filed a Petition for a Writ of Habeas Corpus on September 19, 2025. ECF No. 1. The Court issued an Order Concerning Service of Petition and stay of Transfer or Removal. ECF

No. 4. On the same day, DHS served Petitioner with a new Notice to Appear, recommencing removal proceedings against the Petitioner. DHS Notice to Appear, dated September 19, 2025 (ECF No. 6), Ex. 8.

On September 30, 2025, Petitioner filed an Amended Petition for a Writ of Habeas Corpus. ECF No. 6. On October 2, 2025, Petitioner appeared before the Boston Immigration Court, having previously requested a custody redetermination (bond hearing). The Immigration Judge indicated she had not had time to review the Petitioner's bond request and continued the case until October 16, 2025.

On October 14, 2025, Respondents through Counsel filed their Opposition to Petitioner's Amended Petition. ECF No. 10. On October 15, 2025, Counsel for Petitioner filed a motion requesting leave to file a response to Respondent's opposition, which the Court granted on October 16, 2025. ECF No. 12 and ECF No. 13.

On October 16, 2025, Petitioner appeared before the Chelmsford Immigration Court. The Immigration Judge denied the Petitioner's custody redetermination, stating that the immigration court had no jurisdiction to hear the bond request because the Respondent was subject to mandatory detention. Exhibit 2 hereto. Following the bond hearing, the Immigration Judge terminated the Petitioner's removal proceedings, again. Exhibit 1 hereto. Counsel for DHS reserved appeal.

Petitioner's Immigration Counsel made every effort to communicate with ICE ERO to ascertain the status of Petitioner's release from custody, as he is no longer in removal proceedings. As of 7:59pm on October 16, 2025, there was no response from ICE ERO and Petitioner remains detained at Plymouth County Correctional Facility. Exhibit 3 hereto.

## IV. ARGUMENT

### A. Standard for Granting a Temporary Restraining Order (TRO)

The standards for granting a TRO and a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure are identical. *See California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 76 (D. Mass. 2025), *appeal dismissed sub nom. California v. US Dep't of Educ.*, No. 25-1244, 2025 WL 2604596 (1st Cir. Apr. 23, 2025). A party seeking a preliminary injunction "must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When considering whether to grant this "extraordinary remedy, ... courts must balance the competing claims of injury and consider the effect of granting or withholding the requested relief, paying particular regard to the public consequences." *Winter*, 555 U.S. at 24.

Here, the Petitioner meets both the irreparable harm and likelihood of success prongs and the requested relief is not overly burdensome on Respondents. Accordingly, Petitioner merits issuance of a TRO.

### B. Petitioner Is Likely To Succeed On The Merits Of His Petition

The "likelihood of success on the merits is considered the most important of the four elements and the '*sine qua non*' of the calculus." *California v. U.S. Dep't of Educ.*, 769 F. Supp. 3d 72, 76 (D. Mass. 2025), *citing Ryan v. U.S. Immigr. & Customs Enf't*, 974 F.3d 9, 18 (1st Cir. 2020)." Petitioner's ongoing detention violates his Fifth Amendment right to due process and the Immigration and Nationality Act, 8 U.S.C. § 1231(a)(6). Petitioner is likely to succeed on the merits of his Petition.

Noncitizens are entitled to due process of law under the Fifth Amendment. *Demore v. Kim*, 538 U.S. 510, 523 (2003). To determine whether civil detention violates a detainee's Fifth Amendment due process rights, courts apply the three-part test in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See also Doe v. Moniz*, __ F. Supp.3d __, 2025 WL 2576819, at *10 (D. Mass. Sept. 5, 2025) (Talwani, J.). Under *Mathews*, courts weigh the following three factors: (1) "the privacy interest that will be affected by the official action; " (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

**1. Private interest**

"The interest in being free from physical detention" is "the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529, 531 (2004). *See also Doe,* 2025 WL 2576819, at *10. Petitioner has a significant private interest in being free from physical detention. When assessing the private interest, courts consider the detainee's conditions of confinement, namely, whether the detainee is held in conditions indistinguishable from criminal incarceration. *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (noncitizen detainee held "alongside criminal inmates"); *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020) (same).[1]

Here, Petitioner is being held at the Plymouth County Correctional Facility. He is "experiencing all the deprivations of incarceration, including loss of contact with friends and family, loss of income earning … lack of privacy, [and] the lack of freedom of movement." *Günaydin v. Trump,* 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025).

[1] Petitioner has no criminal convictions.

The first *Mathews* factor plainly supports the Petitioner's claim of a Fifth Amendment violation.

**2. Risk of erroneous deprivation**

Under the second *Mathews* factor, courts must "assess whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Günaydin*, 784 F. Supp. 3d at 1187. Here, Petitioner has been subject to arbitrary detention for 29 days. While Petitioner maintains that his arrest and detention are Fourth and Fifth Amendment violations, respectively, there can be no doubt that his continued detention after his removal proceedings have been terminated is an erroneous and egregious depravation of his liberty interest.

Even by Respondents' own admission, there is absolutely no basis for the Petitioner's continued detention. Disregarding that Petitioner had already been through removal proceedings and that no changed circumstances warranted his arrest, detention, or reissuance of a Notice to Appear, Respondents argued that:

> **Petitioner is detained for the limited purpose of removal proceedings** where he can challenge his inadmissibility determination and seek relief from removal. Petitioner's detention is not punitive or for other reasons than to address his inadmissibility to the United States. His detention is also not indefinite, **it will end upon the conclusion of his proceedings**…. (emphasis added) ECF No. 10, p. 27.

As the Petitioner's removal proceedings have been terminated, there is no justification to merit the Petitioner's continued detention and he should be released immediately.

**C. <u>Petitioner Will Suffer Irreparable Harm</u>**

In the absence of a TRO, Petitioner is at risk of remaining confined in ICE custody indefinitely. Petitioner has detailed the treatment he received at the hands of ICE officers during his violent arrest. Petitioner Decl. (ECF No. 6), Ex. 6. He was forcefully thrown on the ground,

handcuffed, ankle-shackled, and chained. *Id.* At the ICE-ERO Headquarters he was deprived of food and kept in a freezing cold holding cell with no place to sleep. *Id.* He was transported to various locations without being told where he was being taken. *Id.* He was put on an airplane and told he was going to be sent back to his country. *Id.* He was lied to about the validity of his work permit and his SIJS approval. *Id.* He was prevented from calling his family, when he expressed concern that they would not know where he was or what happened to him. *Id.* And for the past 28 days, he has been at the Plymouth County Correctional Facility, which, while perhaps with more humane conditions than the holding cell at the ICE-ERO Burlington Field Office, is still a jail where he doesn't have enough food, warmth, or privacy. *Id.*

Nobody should be treated this way, much less an 18-year-old who has done nothing but avail himself of the protections afforded to Unaccompanied Children, attend all his hearings, promptly seek relief from removal, attend school, and work lawfully to provide for himself and his family. *Id.* The government can try to discriminate against the Petitioner by attempting to classify him as an applicant for admission with limited due process rights, but the United States Constitution does not. ECF No. 10, p. 24. The language in the 5th Amendment is plain: "No person…shall…be deprived of…liberty…without due process of law." The Petitioner is very much a person and therefore entitled to the constitutional protections afforded to all people. His rights have been egregiously violated, and keeping him detained after proceedings have terminated, without explanation, shows a clear disregard of the U.S. Constitution. The harm that Petitioner has suffered each day as a result of ICE's policy of unlawfully subjecting him to mandatory detention cannot be remediated. See R.I.L-R v. Johnson, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) ("Unlike economic harm, the harm from detention pursuant to an unlawful policy

cannot be remediated after the fact.”). The Petitioner has established that he will suffer irreparable harm by continued detention.

### D. The Balance of Equities and Public Interest Weigh Decidedly In Favor of a Temporary Restraining Order

The balance of equities and public interest merge in cases against the government. *See Nken v. Holder*, 556 U.S. 418, 436 (2009). Here, the balance favors Petitioner. Respondents “cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required.” *R.I.L.-R.*, 80 F. Supp.3d at 191. At the same time, the public is served when administrative agencies comply with their obligations. *See TikTok Inc. v. Trump*, 507 F. Supp.3d 92, 115 (D.D.C. 2020).

The potential injury to Petitioner if a restraining order is not issued is profound, while ICE will suffer no harm if it releases the Petitioner. He has an approved SIJS petition and the Immigration Court has determined, now twice, that his removal proceedings should be terminated so that he can adjust his status before USCIS once a visa becomes available. As a result of his arrest, USCIS revoked his grant of Deferred Action and invalidated his permission to work. ICE disrupted the status quo by placing the Petitioner in detention without cause. Nothing about Petitioner’s release from custody would harm Respondents or interfere with ICE’s enforcement of the immigration laws. In contrast, Petitioner has a significant interest in being free from detention.

## V. CONCLUSION

For all the foregoing reasons, Petitioner Luis David Ajtzac Osorio respectfully requests that the Court grant a TRO requiring Respondents to immediately release Petitioner from custody with no further restraints on his liberty.

Respectfully submitted,
**LUIS DAVID AJTZAC OSORIO,**
By his attorney,

Dated: October 17, 2025

/s/ Alexandra Peredo Carroll

Alexandra Peredo Carroll, BBO # 667400
Mabel Center for Immigrant Justice
200 Portland Street, 5th Floor
Boston, MA 02114
Tel. 617-417-4325
aperedocarroll@mabelcenter.org

*Pro Bono Counsel for Petitioner*

**Certificate of Service**

I hereby certify that I caused the foregoing document to be served on Respondents' counsel on this 17th day of October, 2025 via the CM/ECF platform.

/s/ Alexandra Peredo Carroll
Alexandra Peredo Carroll

**LR 7.1 Certificate**

I hereby certify that I have conferred with Respondents' counsel who opposes the motion.

/s/ Alexandra Peredo Carroll

Alexandra Peredo Carroll